UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHLEEN BRENNAN,
                Plaintiff,

v.                                                    00-CV-01985

ALBANY COUNTY; ALBANY
DEPARTMENT OF SOCIAL SERVICES;
SAL GIMONDO,
                Defendants,
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| DELORENZO LAW FIRM, LLP<br>Attorneys for Plaintiff<br>201 Nott Terrace<br>Schenectady, NY 12307 | KATHLEEN M. KILEY, ESQ. |
| McNAMEE, LOCHNER, TITUS<br>& WILLIAMS, P.C.<br>Attorneys for Defendants<br>Albany County and Albany County<br>Department of Social Services<br>75 State Street<br>P.O. Box 459<br>Albany, NY 12201-0459 | DAVID J. WUKITSCH, ESQ. |
| GIRVIN & FERLAZZO, P.C<br>Attorneys for Defendant<br>Sal Gimondo<br>20 Corporate Woods<br>Albany, NY 12211 | GREGG T. JOHNSON, ESQ..<br>TANYA A. YATSCO, ESQ. |

HOWARD G. MUNSON, SR. J.

MEMORANDUM DECISION AND ORDER

Plaintiff Kathleen M. Brennan ("plaintiff") commenced this action pursuant to Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* (and as amended) ("Title VII"), and

the New York State Human Rights Law, NY Executive Law §§ 296 & 297 (McKinney 1992), asserting causes of action in sexual harassment, sexually hostile work environment and retaliation. On May 8, 2001, the Hon. David N. Hurd entered an order approving a stipulation wherein plaintiff's attorney, and counsel for defendant Sal Gimondo, agreed that all federal claims contained in the complaint as against this defendant would be dismissed with prejudice, and without attorneys' fees or cost to any party as against the other, but the state claims contained in the complaint as against this defendant would be continued.

## BACKGROUND

Plaintiff was hired by the Albany County Department of Social Services ("the County") in February 1990. Pl.'s Dep. at pp. 13-15; Ex. I. During the period the events in this case took place, the County had a sexual harassment policy, that was included in the Rules and Regulations for County Employees. This policy specified that sexual harassment was unlawful and unacceptable, that the County would do whatever action was required to prevent or correct behavior which transgressed the policy, and that complaints of violations of the policy should be made known to the County Department of Human Resources, Division of Affirmative Action ("Affirmative Action Division"). Ex. K. Plaintiff acknowledged that the County provided sexual harassment training to its employees. Pl.'s Dep. p. 364, Van Buren Dep. at pp. 7-8.

In the complaint plaintiff filed with the New York State Division of Human Rights, she asserted three unconnected incidents of sexual harassment; (1) that three female co-employees occasionally called her names during the period 1996-1998, and one male worker kissed her on

her birthday in 1996, (2) that another female co-employee yelled at her five times between 1995 and 1998, and (3) that a male co-worker sexually assaulted her on December 24, 1998. None of these co-employees held a supervisory position over plaintiff, and, with the exception of the one who allegedly kissed plaintiff on her birthday, all the other co-employees named in the complaint knew the plaintiff.

Starting in 1996, three of plaintiff's non-supervisory co-employees, Carol Campanella, Laurie Bagley and Kathy Eaton, asked her if she was having a romantic relationship with their supervisor, Stephen VanBuren, and that Bagley and Eaton occasionally referred to her as a "slut," "bitch," and "Miss Piggy." Pl.'s Dep. at pp. 19, 21-23, 29, 62; Def.'s Ex. L, M. Plaintiff could not remember how many times these comments were made. Pl.'s Dep. at pp. 64-65. Plaintiff felt that inquiring if she was having an affair with her supervisor, was, in her opinion, sexual harassment because she was "totally" offended by it. Pl.'s Dep. p. 63.

Plaintiff asserts that on April 25, 1996, co-employee Ron Brown, wished her happy birthday and awkwardly attempted to kiss her. Pl.'s Dep. pp 47-48, 50-51. When she turned her head to avoid him, Brown ended up kissing the back of her head. Id. Brown did not supervise plaintiff. Pl.'s Dep. p. 42.

Plaintiff reported these episodes to her immediate supervisor, Stephen VanBuren, verbally and in writing and to her 2nd level supervisor, Richard Giroux, in writing. Pl.'s Dep. pp. 33-34.

Due to the above episodes, and because she feared her estranged husband, against whom she had an order of protection which he had violated three times, might attempt to harass or assault her at work, on April 26, 1996, plaintiff requested a transfer. VanBuren Aff. Ex. L. The

County granted the request and her work station was moved from the second to the fifth floor.

Plaintiff made no further complaints concerning these individuals until August 18, 1998, when plaintiff complained that Bagley had called her a "slut" and Eaton had laughed, VanBuren Aff.Ex.M. On August 28, 1998, plaintiff filed a complaint with the Affirmative Action Division of defendant County, claiming that the comments made about the affair, the name calling of Bagley and Eaton and the birthday kiss by Brown constituted sexual harassment. Pl.s Dep. pp. 106-107, 367.

The Affirmative Action Division conducted a full investigation of plaintiff's charges and concluded that, whichever party was telling the truth, it was apparent that those involved could not work in harmony. Def.'s Ex. O. Plaintiff requested to be moved away from Bagley, Eaton and Campanella. Pl.'s Dep. p. 34, and prepared a list of four options, two permanent and two temporary, that would satisfy her. Pl.'s Dep. p. 99, Def.'s Ex. P. Plaintiff acknowledged that she preferred Permanent Option 1, but it was not then available. Pl.'s Dep. pp. 102-103. Plaintiff and the County then agreed to Temporary Option 2, and signed a Notice of Resolution/Concilation dated September 24, 1998 ("the Resolution").

The Resolution called for plaintiff to continue to work in the Child Support Unit until Computer Services utilized the space. Moving only when the rest of the office has to vacate, at which time, plaintiff and a co-employee will switch places. When the move became effective to the new building, plaintiff would be placed there. Minimal contact was advised between plaintiff and Mary Siple. VanBuren Aff., Ex. Q. That was to take place in September 1998. Pl.'s Dep.108. The alleged name calling eventually ended. Pl.'s Dep. p. 405.

Plaintiff also complained that she was harassed by co-employee Mary Siple, a non supervisor. Pl.'s Dep. p. 145. On March 16,1995, they went on a shopping trip in plaintiff's automobile. Pl.'s Dep. pp 73-74. When they arrived at their destination and exited the vehicle, Siple noticed chewing gum stuck to the rear of her pants. Pl.'s Dep. pp. 74-47, 406-407. Believing that the gum came from plaintiff's car, Siple became distraught and yelled at plaintiff using the "F" word and pointing to the gum on her pants. Pl.'s Dep. Id. Thereafter, their relationship deteriorated, Pl. Dep. p. 114, and on June 16, 1995, Siple yelled at plaintiff using foul language. Van Buren Aff. Ex. S. Siple was transferred and the alleged harassment stopped for a time. Pl.'s Dep. pp. 77-78.

There was concern, however, because part of the Resolution was that plaintiff would be transferred to another unit where Siple worked. VanBuren Aff., Ex. Q, T, and soon after the transfer in September 1998, difficulties between Siple and plaintiff began again. This was apparent from plaintiff's memoranda of October 21, October 26 and November 25, 1998, postulating that Siple yelled at her three times, and on one occasion, saying "Jesus Christ." Pl.'s Dep. at pp. 112-113, 119-121, 132-133; Ex. U. A short time after the November 25th encounter Siple was transferred, and plaintiff had no further difficulties with her. Pl.'s Dep. pp. 141-143.

Plaintiff agreed that not all of Siple's purported conduct amounted to sexual harassment Pl.s Dep. p. 132, but claimed that, in her opinion, Siple's use of the "F" word during the gum occurrence was sexual harassment. Pl.'s Dep. pp. 76, 112. Plaintiff also claims that Siple's saying "Jesus Christ" on October 28, 1998, was sexual harassment because, in her opinion, a co-employee taking the Lord's name in vain constitutes sexual harassment. Pl.'s Dep. pp. 132-133. Lastly, plaintiff claimed that, in her opinion, Siple's act in pointing to the gum on the seat of her

own pants was sexual harassment because Siple was pointing at her posterior. Pl.'s Dep. at p. 407.

Plaintiff further expressed discontent that on Christmas Eve 1998, while alone in the reception area of the Child Support Enforcement Office, with co-employee Sal Gimondo, he sexually assaulted her, attempting to push her onto a desk, carrying her into an office, and attempting to put a hand up her dress. Pl.'s Dep. p. 293, 306-308. Girmondo was not her supervisor, and they had previously been friends. Pl.'s Dep. pp. 215, 221-222.

Plaintiff discussed the incident that same day with her immediate superior, Frederick Fontaine, but admitted that she did not go into the details, and did not ask that he take any action on it. Pl.'s Dep. p. 376.; Fontana Dep. p. 14, VanBuren Aff, Ex. Y. Plaintiff also reported the event to Stephen Van Buren, her ultimate supervisor, on December 29, 1998. Pl.'s Dep. pp. 377-379. She admitted in writing that she did not discuss the details with Van Buren, but gave him "some idea about the nature of the incident." Van Buren Aff. Ex. V. Van Buren questioned Gimondo about plaintiff's complaint, and Gimondo stated that he was only trying to give her a Christmas kiss. VanBuren Dep. pp. 26-27. VanBuren then told Gimondo that his conduct was inappropriate and, that, in the future he was to avoid all conduct with plaintiff. VanBuren advised plaintiff of his discussion with Gimondo, VanBuren Dep. p. 27; VanBuren Aff. at ¶ 20, and she stated in writing that she was satisfied with his response, and thanked him for his prompt attention to the matter. Ex. V. Plaintiff never asked VanBuren to file a complaint for her with the Affirmative Action Division. Pl.'s Dep. p. 384; VanBuren Dep. p. 32; VanBuren Aff. ¶ 21.

The County did not receive any complaints from plaintiff or anyone else concerning any improper behavior by Gimondo any time before the December 24, 1998 happening. VanBuren

Aff. ¶ 22. Plaintiff's complaint does not set forth any further inappropriate conduct by Gimondo after the Christmas Eve incident, and the County never assigned her to a position alone with Gimondo thereafter. Pl.'s Dep. p. 388.

On July 14, 1999, plaintiff did file a complaint concerning the December 24, 1998 incident with Gimondo. Pl.'s Dep. pp. 385-86; VanBuren Aff., Ex. X. The County dismissed this complaint and closed the file on November 8, 1999, because plaintiff had filed a complaint based on the same incident on October, 29, 1998, with the State Department of Human Rights, and, Gary Horne, the Director of Affirmative Action, who would have investigated the complaint filed in his office, was listed as a witness in the complaint filed by plaintiff with the State Division of Human Rights.

The complaint in the instant case was filed on December 27, 2000. It set forth claims of sexual discrimination against plaintiff in the work place in violation of the Civil Rights Act of 1964, 42 U.S..C. § 2000 et seq. (as amended) (Title VII), and §296 and § 297 of the New York State Executive Law.

Currently before the court are motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, by defendants Albany County and the Albany County Department of Social Services, the other by defendant Sal Gimondo. Plaintiff has entered opposition to these motions.

DISCUSSION

Summary judgment is properly granted only when the pleadings, depositions, answers

to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). In assessing the record, "the non-movant will have his allegations taken as true," Samuels v. Mockry, 77 F.3d 34, 36 (2d Cir.1996) (*per curiam*), and the district court must draw all factual inferences in favor of the non-moving party.

Although summary judgment may be inappropriate in some sexual harassment cases where questions persist as to whether the conduct at issue amounts to sexual harassment, Gallagher v. Delaney, 139 F.3d 338, 343-44, 1998 WL 119614, at *3 (2d Cir.1998), summary judgment under Rule 56 is still fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325-26, 106 S. Ct. 2548, 91 L Ed.2d 265 (1986). Summary judgment should be used "sparingly" when, as is often the case in sexual harassment claims, state of mind or intent are at issue. Dister v. Continental Group, Inc., 859 F.2d 1108, 1114 (2d Cir.1988). However, plaintiffs may not avoid summary judgment by simply declaring that state of mind is at issue. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985) ("[t]he summary judgment rule would be rendered sterile ... if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.") Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation, id., and plaintiff must still offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L Ed.2d 202 (1986).

Title VII claims:

"Title VII requires a claimant to file a discrimination charge with the EEOC within 180

days of the alleged unlawful employment action or, if the claimant has already filed the charge with a state or local equal employment agency, within 300 days of the alleged act of discrimination." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir.1998). This requirement "is analogous to a statute of limitations," Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir.1996), and bars consideration of "discriminatory incidents not timely charged before the EEOC" in subsequent suits in district court. Quinn, 159 F.3d at 765. Unless the continuing violation exception applies, a Title VII cause of action includes only incidents alleged to have taken place in the 300 day period preceding the filing of the complaint with the state agency. Harrington v. County of Fulton, 153 F. Supp.2d 164, 169 (N.D.N.Y. 2001).

Although plaintiff asserts that she timely filed her complaint with the SDHR on September 29, 1999, when she provided her information to SDHR employee, Daniel Reisman, Human Rights Specialist I, and signed a verified complaint which Mr. Reisman notarized, the record manifests otherwise.

The County defendants deny that plaintiff's complaint was timely filed on September 28, 1999. On March 26, 2002, David J. Wukitsch, Esq., attorney for the County defendants, spoke with Daniel Reisman to confirm the filing date of plaintiff's SDHR complaint. Mr. Reisman told him that he had interviewed her on September 29, 1999, and that she filed her complaint on October 29, 1999. Wukitsch Aff. ¶ 5. Mr. Reisman faxed a letter to Mr. Wukitsch on the same date, confirming that he had checked the SDHR records and they indicated that plaintiff's complaint was filed on October 29, 1999. Id.

The cover letter containing plaintiff's complaint, which the SDHR sent to the County was dated October 29, 1999, and was stamped "Received" by the County on November 3, 1999.

Additionally, plaintiff admits in her reply to paragraph 40 of defendant County's Statement of Material Facts, that her complaint with the SDHR was filed on October 29, 1999. Plaintiff's Responses to State of Material Facts at # 40.

Under a Work Sharing Agreement between the EEOC and the NYSDHR, the NYSDHR has been designated as an agent of the EEOC for the receipt of charges. Consequently, the plaintiff's filing of her ADEA claim with the NYSDHR on October 29, 1999, constituted a simultaneous filing with the EEOC. Ford v. Bernard Fineson Development Center, 81 F.3d 304, 308 (2d Cir.1996). This filing with the SDHR meant that plaintiff's Title VII causes of action could include only those occurrences that took place within the 300 days proceeding that date, to wit, January 2, 1999 to October 29, 1999. Since no occurrences took place within this time period, plaintiff's federal claims are statutorily barred.

State Law Claims:

§ 51 of the New York County Law provides that "[a]ctions or proceedings by or against a county shall be in the name of the county."

New York State County Law § 52, applies to any claim for "invasion of personal or property rights, of every name and nature" and to any claim for damages "arising at law or in equity". Therefore, a cause of action under the Human Rights Law, while not a traditional tort, is subject to the notice of claim requirements of County Law § 52 (Mills v. County of Monroe, 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456, *cert. denied* 464 U.S. 1018, 104 S.Ct. 551, 78 L. Ed.2d 725 (1983); Hibbert v. Suffolk County Dept. of Probation, 267 A.D.2d 205, 699 N.Y.S.2d 466; Piontka v. Suffolk County Police Department, 202 A.D.2d 409, 608 N.Y.S.2d 503.

§ 52 of the County Law also has a Notice of Claim provision provides, in relevant part:

Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature ... and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in accordance with section fifty-e of the General Municipal Law.  This section in turn, states that "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action ... the notice of claim shall ... be served ... within ninety days after the claim arises."

State notice of claim provisions are matters of substantive state law that must be applied by federal courts to supplemental state claims.  Felder v. Casey, 487 U.S. 131, 151, 108 S. Ct. 2302, 101 L. Ed.2d 123 (1988). Where state law specifies a particular notice of claim procedure, federal courts are not free to substitute another procedure.  Jones v. Stancik, 2004 WL 2287779 (E.D.N.Y.2004). New York law provides that no legal action may be brought against a county or its employees unless a notice of claim has been served on the county within 90 days of the event giving rise to the claim. NY County Law § 52, NY General Municipal Law 50-e. Defendant is a county employee, thus, claims against him are subject to the notice provisions as well. Keating v. Gaffney, 182 F. Supp.2d 278, 290 (E.D.N.Y. 2001).  The law also obligates the plaintiff to allege compliance with the notice requirements in the complaint. N.Y. General Municipal Law § 50-i(1)(b).  The failure to timely serve a notice of claim under County Law § 52 in an action against a county to recover damages based on the Human Rights Law is fatal

11

unless the action has been brought to vindicate a public interest or leave to serve a late notice of claim has been granted. <u>Michael Picciano v. Nassau County Civil Service Commission</u>, 290 A.D.2d 164, 736 N.Y.S.2d 55.

In the instant case the complaint does not allege that a notice of claim was ever served upon the County, nor does plaintiff make any contention that she served such notice, that the lawsuit was brought to vindicate a public interest, or that leave to serve a late notice had been granted. Consequently, plaintiff's state law claims must be dismissed for failure to serve a timely notice of claim.

<u>Conclusion:</u>

Plaintiff's evidence does not support her Title VII claims of a continuing violation, a hostile work environment and retaliation based on sexual harassment

Accordingly, the summary judgment motions brought by defendants Albany County, Albany County Department of Social Services and Sal Gimondo are granted and the complaint is dismissed in its entirety.

**IT IS SO ORDERED**

Dated: September 30, 2005
Syracuse, New York

_____
Howard G. Munson
Senior U.S. District Judge